UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Michelle Lynne Kosilek,                              \*
                                                     \*
          Plaintiff,                                 \*
                                                     \*
v.                                                   \*
                                                     \*     C.A. No. 00-12455-MLW
                                                     \*
Harold W. Clarke,                                    \*
                                                     \*
          Defendant.                                 \*
                                                     \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## JOINT STATUS REPOR FOR AUGUST 11, 2009 STATUS CONFERENCE

Plaintiff Michelle Kosilek and Defendant Harold W. Clarke file this joint status report to update the Court on their respective positions on all issues to be presented at the August 11 status conference.  After conferring, pursuant to this Court's June 23, 2009 order, the parties state their respective positions as follows:.

**I.       Plaintiff's Statement On The Issues To Be Addressed**

         a.        The History of the Dispute

The direct issue before the Court is the cessation of Ms. Kosilek's electrolysis treatment. This treatment has been at issue for over six years.  Electrolysis was first recommended in the original treatment plan for Ms. Kosilek by David Seil, M.D., on February 23, 2003.  *See* Trial Ex. 10.

> 2. Electrolysis.  Facial hair is a major signifier of male gender.  The difficulty for the individual with GID exists more in having to see oneself in the mirror than in presenting to the public.  Laser treatments are quick and more cost effective than previous methods.  In combination with estrogen, electrolysis is very effective.

*Id.*

In 2008, five years after Dr. Seil's recommendation, the Defendant still had not provided Ms. Kosilek with electrolysis. The Plaintiff therefore filed an informative motion on January 11, 2008 seeking a status conference to discuss, *inter alia*, the lack of electrolysis treatment. *See* Jan. 8, 2008 Informative Motion (ECF Doc. 411). On February 29, this Court granted the request for a status conference. *See* Feb. 29, 2008 Memorandum and Order (ECF Doc. 416). On April 1, 2008, the Court held its status conference, and the same day it issued an order that the parties must file a status report by May 2 stating whether the issues regarding Ms. Kosilek's medical treatment raised in the status conference had been resolved. *See* April 1, 2008 Order (ECF Doc. 427). In the resulting May 2, 2008 Joint Stats Report, the Defendant's counsel represented to the Court that the "electrolysis treatment was approved for [Ms.] Kosilek on May 2 by the medical provider for the DOC, the University of Massachusetts Correctional Health Program." *See* May 2, 2008 Joint Status Report (ECF Doc. 432). On May 12, 2008, prior to the testimony of Commissioner Harold Clarke, this Court noted that the "joint status report indicates that progress was made in addressing the immediate needs in regards to the endocrinologist and the electrolysis and it's my understanding that I'm not being asked to address those [needs] today." *See* May 12, 2008 Tr. at 5:3-7.

The Defendant never informed this Court of any limitations on Ms. Kosilek's electrolysis treatment when it approved of the treatment. However, when the Defendant filed its opposition to Plaintiff's motion for interim relief in June 2009, it attached a Progress Note dated May 4, 2009 as an exhibit in which it was reported that only six weeks of electrolysis treatment was initially approved. *See* Ex. 1 to Def. Opp. to Pl. Mtn for Interim Relief, June 3, 2009 (EFC Doc. 463-3). No explanation has been provided and can be found anywhere in the record for the six week treatment schedule, which appears to be an arbitrary timeline not based on any medical decision. Ms. Kosilek has requested discovery to understand the basis for the six-week

limitation, but the Defendant has filed a motion for a protective order to prevent discovery, and

to date has produced none of the requested documents or information.

It is obvious that Ms. Kosilek still requires electrolysis, as she demonstrated to prison

staff by not shaving for several days.  Although not removing her facial hair is very painful as it

recalls her biological incongruity, she can let her facial hair grow and show her grey hair to

anyone.  Electrolysis is specifically targeted at permanently removing such hair, which shaving

does not do.  The need for treatment is still clear.

The cessation in treatment caused substantial harm to Ms. Kosilek.  She became

increasingly agitated, anxious, and depressed, according to repeated statements to counsel.[1]  She

calls and reports to her counsel daily about this issue, and she temporarily fired her longtime

therapist Mark Burrowes in a moment of extreme anxiety.

Moreover, the electrolysis treatment should not be considered in isolation.  This is one

component in a larger treatment plan addressing the totality of symptoms and injuries caused by

Ms. Kosilek's GID.  *See* Trial Ex. 10 (Feb. 23, 2003 Treatment Plan from Dr. Seil).  The

Defendant minimizes the significance of abrupt cessation in treatment by treating electrolysis as

a single treatment recommendation:

> At issue in the instant motion is plaintiff's request for additional electrolysis
> treatments to remove unwanted facial and chest hair not removed by previous
> courses of treatment using both laser and electrolysis. The issue constitutes a
> disagreement between plaintiff and the DOC's medical and mental health services
> providers over the proper course of treatment for removal of plaintiff's remaining
> unwanted hair.

Def. Opp. to Pl. Mtn for Interim Relief at 1 (ECF DOC 463).  Electrolysis for Ms. Kosilek is

categorically different than electrolysis for non-GID patients.  Just as giving pain relievers to

---

[1] Plaintiff's counsel had still not received the Plaintiff's updated medical file from the Defendant as of the date of
this status report and therefore is relying on the Plaintiff's statements rather than recent medical records.

someone with a debilitating nerve condition is far more urgent than for someone with a typical

headache, electrolysis for a GID patient is different in need than electrolysis for a typical patient.

        b.        The Standards of Care

The Harry Benjamin International Gender Dysphoria Association[2] *Standards of Care*,

which this Court has stated describe "the generally accepted treatment for individuals with

gender identity disorders in the community," *Kosilek v. Maloney,*, 221 F. Supp. 2d 156, 166 (D.

Mass. 2002), recommends electrolysis for the removal of facial hair for patients such as Ms.

Kosilek:

> Facial hair removal via electrolysis is a generally safe, time-consuming process
> that often facilitates the real-life experience for biological males. *Formal medical
> approval for hair removal is not necessary; electrolysis may be begun whenever
> the patient deems it prudent.* It is usually recommended prior to commencing the
> real-life experience. Many patients will require two years of regular treatments to
> effectively eradicate their facial hair.

Trial Ex. 9 at 18 (emphasis added).

The DOC has been "on notice" that the Standards of Care describe the "the generally

accepted treatment" for Ms. Kosilek since the 2002 decision. Thus, Defendant has known that:

(1) "[f]ormal medical approval for hair removal is not necessary"; (2) "it is usually

recommended prior to commencing the real-life experience"; and (3) "[m]any patients will

require two years of regular treatments to effectively eradicate their facial hair." Despite this, the

Defendant forced Ms. Kosilek to seek medical approval, to wait five years after she commenced

hormone treatment before receiving electrolysis, and now, notwithstanding the previous

unqualified representation to this Court that the Defendant would provide electrolyis, takes the

position that she will receive only the six weeks of treatment that she already has received.

---

[2] This has been re-named W-Path.

      c.        <u>The Unqualified Medical Professional Who Cancelled The Treatment</u>

The medical professional who apparently made the decision to stop Ms. Kosilek's electrolysis is Aminidav Zakai, M.D, the chief psychiatrist for Mental Health Management, the DOC's mental health provider. The Defendant filed an affidavit from Dr. Zakai offering Dr. Zakai's opinion that Ms. Kosilek no longer needed electrolysis. *See* June 3, 2009 Affidavit of Aminidav Zakai, M.D., ¶3 (ECF Doc. 463-2.). Dr. Zakai is a psychiatrist. It defies logic that a psychiatrist would make the recommendation to stop such treatment rather than a GID specialist or a dermatologist or professional familiar with electrolysis. Indeed, Ms. Kosilek's electrolysis treatment was originally approved by the DOC's *medical* provider, the University of Massachusetts Correctional Health Program. *See* May 2, 2008 Joint Status Report (ECF Doc. 432) ("[Ms.] Kosilek was seen in person by the endocrinologist Dr. Maria Warth on April 22, and electrolysis treatment was approved for [Ms.] Kosilek on May 2 by the *medical provider for the DOC, the University of Massachusetts Correctional Health Program.*") (emphasis added). The Defendant has not explained why the treatment was stopped by the DOC's *mental health provider*.

Ms. Kosilek's motion for interim relief should be granted because the Defendant has not demonstrated a medical basis for cessation in treatment. It is clearly unreasonable that a psychiatrist made the decision to stop the treatment, when electrolysis is not a mental health issue, as indicated by the fact that the medical provider for the DOC originally approved the treatment. The Defendant and the DOC have not followed the Standards of Care in their implementation of the electrolysis treatment in a number of respects. This Court should order the DOC to restart electrolysis immediately and continue such treatment until facial hair removal is no longer needed for Ms. Kosilek.

d.       Collateral Issues

There are collateral issues not directly concerning electrolysis but that relate to Ms.

Kosilek's overall treatment that should be addressed at this status conference.  Ms. Kosilek has

been informed by the Deputy Superintendent of Operations at MCI-Norfolk Cynthia Sumner that

she can no longer purchase female clothing.  Ms. Kosilek believes that the DOC has changed its

policy regarding the availability of women's clothing for inmates with GID and that the policy is

being applied regardless of an inmate's treatment plan.  She cannot present as female without

being able to access purchase women's clothing.  This will be an ongoing issue regardless of the

outcome of this trial that needs to be addressed.

Further, this Court may consider the Defendant's conduct in other GID cases as relevant

to the defendant's deliberate indifference.  In a related case, District Judge Joseph Tauro issued

an order on January 9, 2009 compelling Stephen Levine, M.D., to decide whether to recommend

hormone treatment for inmate Teresa Brugliera. [3]  (*See* Preliminary Injunction Order, ¶5, in

*Brugliera v. Commissioner of Corr*., C.A. 07-40323, attached hereto as Exhibit A, offered only

by the Plaintiff.)  The order is significant because Ms. Brugliera was recommended for hormone

treatment originally on June 1, 2005 by Fenway clinicians Kevin Kapila, M.D., and Randi

Kaufman, Psy.D., and this recommendation is entered under seal in evidence in this case.  *See*

Trial Exhibit 78.   As Ms. Brugliera's counsel's brief states, that recommendation was never

implemented by the DOC because they put a hold on her treatment, even though she received a

formal approval from the endocrinologist. (*See* Pl. Renewed Mtn for Prelim. Injunction at 2, in

*Brugliera v. Commissioner of Corr*., C.A. 07-40323, attached hereto as Exhibit B, offered only

by the Plaintiff).  The history shows that the Dr. Levine's involvement with the DOC has altered

---

[3] The order itself is undated, but it was issued on January 9 on the District Court's ECF website.

the treatment for inmates involved in related litigation against the Defendant who had previous treatment plans by the specialists at the Fenway Community Health Center.

II.      **Defendant's Statement of the Issue to be Addressed:**

A.      **Statement of Relevant Facts:**

1.      Plaintiff is an inmate serving a life sentence, currently incarcerated at MCI-Norfolk.

2.      Defendant is the Commissioner of the Massachusetts Department of Correction ("DOC").

3.      Aminadav Zakai, M.D. serves as the Chief Psychiatrist for the DOC's mental health services provider, MHM.

4.      Plaintiff is diagnosed with a psychiatric disorder known as Gender Identity Disorder ("GID").  Plaintiff's current treatment for GID includes hormone therapy, regular psychotherapy, and access to female clothing and cosmetics.  Affidavit of Aminadav Zakai, M.D., ¶ 2. (Attached as exhibit 1 to Defendant's Opposition to Plaitiff's Request for Interim Relief).

5.      Plaintiff has also received medical treatment for removal of unwanted facial and chest hair using lasers and electrolysis.  Zakai Aff., ¶ 2; Kosilek Aff., ¶¶ 3-4.  Plaintiff received seven electrolysis treatments between August 18, 2008 and October 6, 2008. Kosilek Aff., ¶ 4. The prior treatments, utilizing both laser hair removal and electrolysis, have resulted in the removal of a significant amount of unwanted hair from plaintiff's face and chest.  Zakai Aff., ¶ 3.

6.      The medical decision to provide plaintiff with electrolysis treatments between August 18, 2008 and October 6, 2008 was made by UMass, not by the DOC.  The medical

decision not to order further electrolysis treatments beyond those already provided plaintiff from August to October, 2008 was made by UMass, not the DOC.  Zakai Aff., Exhibits 2 & 3; May 2, 2008 Joint Status Report; 103 DOC 610.01 ("[T]he contractual medical provider shall be solely responsible for making all decisions with respect to the type, timing and level of services needed by inmates covered under the contractual agreement with the Department of Correction.")

7.      Presently, there is no medical order for further hair removal treatments using electrolysis for plaintiff. Zakai Aff. ¶ 3.

8.      The notes from the May 4, 2009 treatment team meeting with plaintiff and the May 5, 2009 progress note from MCI-Norfolk Acting Medical Director, Dr. Rebecca Lubeczyk regarding plaintiff's request for the removal of remaining unwanted hair through electrolysis indicate that neither the DOC's medical services provider medical provider, UMass, nor the DOC's mental health services provider, MHM, have authorized electrolysis treatments beyond the series of treatments authorized as a follow-up to the laser hair removal in 2008.  Zakai Aff., Exhibits 2 & 3.  In both the May 4, 2009 treatment team meeting notes and her May 5, 2009 progress note, Dr. Lubelczyk indicates that she had viewed plaintiff's last electrolysis treatment at the request of Dr. Brewer, UMass Medical Director, and had questioned the efficacy of further electrolysis treatments. Id.

9.      Dr. Zakai has indicated that further hair removal treatment with electrolysis is not necessary in light of plaintiff's significant loss of facial and chest hair due to the prior hair removal treatments using laser and electrolysis. Zakai Aff., ¶ 3.  Dr Zakai states that there are non-medical methods for hair removal, including depilatories and more frequent opportunities for shaving with an electric shaver, available to plaintiff for removal of remaining facial and chest hair.  Id.

10.     While the February 24, 2005 evaluation of plaintiff by the Fenway Clinic states that plaintiff expressed "joy around being feminized through hormone therapy, facial and body hair removal, and her ability to have access, and to dress in, feminine attire and make-up is palpable," the evaluation did <u>not</u> recommend that plaintiff be provided with electrolysis for the removal of dark and white facial hair resistant to laser treatments.  February 24, 2005 evaluation of Drs. Kapilla and Kaufman (Trial Exhibit 25).

### B.      Statement of Legal Issues

1.      Plaintiff's Motion for Interim Relief, filed on May 20, 2009 focuses entirely on the denial of plaintiff's request for GID treatment in the form of further hair removal treatments using electrolysis.  Plaintiff's Motion for Interim Relief.

2.      Plaintiff's May 16, 2009 affidavit in support of motion for interim relief focuses entirely upon plaintiff's attempts to obtain further electrolysis treatments for removal of remaining unwanted hair.  May 16, 2009 Affidavit of Michelle Lynn Kosilek.

3.      In order to grant plaintiff's request for an injunction requiring Commissioner Clarke to provide additional electrolysis treatments, this Court must find that: 1) plaintiff will prevail on the merits; 2) plaintiff would suffer irreparable harm without an injunction; 3) the harm to plaintiff would exceed the harm to defendant from the imposition of the injunction; and 4) the public interest would not be adversely affected by an injunction.  See Pagan v. Calderon, 284 F.3d 184, 191 (1st Cir. 2002).

4.      Injunctive relief is "to be used sparingly, and only in a clear and plain case." Rizzo v. Goode, 423 U.S. 362, 378 (1976) (When a government agency is involved, the requirement that the government be granted the "widest latitude in the dispatch of its own internal affairs" must be observed.).  See also  O'Shea v. Littleton, 414 U.S. 488, 499 (1974) ("proper balance in the concurrent operation of federal and state courts counsels restraint against

the issuance of injunctions against state officers").   Where a plaintiff seeks injunctive relief

against a state officer, relief is warranted only when "irreparable injury" is demonstrated.  City of

Los Angles v. Lyons, 461 U.S. 95, 111 (1983); Lewis v. Casey, 518 U.S. 343 (1996).

   5.      The Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, holds that "[t]he
court shall not grant or approve any prospective relief unless the court finds that such relief is
narrowly drawn, extends no further than necessary to correct the violation of the Federal right,
and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C.
§ 3626(a)(1).

   6.      To succeed in the request for interim injunctive relief, plaintiff must demonstrate
that the failure to provide the additional electrolysis treatments constitutes a violation of the
Eighth Amendment.

   7.      The Eighth Amendment provides that prison officials and doctors may violate the

Eighth Amendment if they exhibit "deliberate indifference to serious medical needs" of

prisoners.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In order to succeed on a claim of cruel

and unusual punishment, a prisoner must show that his medical treatment is "so grossly

inadequate as to constitute a knowing denial of proper medical care." DesRosiers v. Moran, 949

F.2d 15, 19-20 (1st Cir. 1991); Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (Deliberate

indifference may be found where the medical care is "so clearly inadequate as to amount to a

refusal to provide essential care.").  Under the deliberate indifference standard, a prisoner must

satisfy both an objective and a subjective component.  Farmer v. Brennan, 511 U.S. 825, 846 n.9

(1994).

   8.      Adequate medical services are "services at a level reasonably commensurate with

modern medical science and of a quality acceptable within prudent professional standards."

DeCologero, 821 F.2d 39, 42 (1st Cir. 1987); Kosilek v. Maloney, 221 F. Supp. 2d 166, 180 (D.

Mass. 2002).  However, adequate medical care does not mean that an inmate is entitled to ideal

care or the care of his choice.  DeCologero, 821 F.2d at 43.

   9.      An inmate's allegations which reflect a disagreement with the prison medical staff

on the appropriate course of treatment state a constitutional violation, even if they present a

colorable claim of negligence.  DesRosiers, 949 F.2d at 20 ("a claim of inadequate medical care which reflects no more than a disagreement with prison officials about what constitutes appropriate treatment does not state a cognizable claim under the Eighth Amendment"); Watson v. Caton, 984 F.2d  537, 540 (1st Cir. 1993).

10.     To succeed under the subjective component, a plaintiff must demonstrate that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  The Supreme Court has defined the subjective component of the deliberate indifference standard as requiring conduct that rises to the level of recklessness as defined under criminal law. Id at 836-837; Wilson v. Seiter, 501 U.S. 294, 299-300 (1991); DesRosiers, 949 F.2d at 19.

11.     The analysis of the subjective component of the deliberate indifference inquiry must consider the constraints imposed by the "realities of prison administration." DesRosiers, 949 F.2d at 19; Helling v. McKinney, 509 U.S. 25, 33 (1993); Wilson v Seiter, 501 U.S. at 302-303; Kosilek, 221 F. Supp. 2d at 181-182.  The subjective test of the deliberate indifference standard is directed to the "official responsible for making the relevant decisions regarding an inmate's medical care."  Farmer, 511 U.S. at 847; Kosilek, 221 F. Supp. 2d at 181.

12.     Here, plaintiff will not succeed on the merits of the claim for interim relief alleging that the decision of the DOC's medical and mental health providers not to order further electrolysis treatments for plaintiff violates the Eighth Amendment.  First, plaintiff has not shown that additional electrolysis treatments for the removal of remaining unwanted hair constitute a serious medical need.  It is undisputed that plaintiff presently receives GID treatment in the form of psychotherapy, hormone therapy, and access to many of the clothing and toiletry items that are available to female inmates.  It is also undisputed that plaintiff has undergone a full

course of hair removal for the face and chest using laser, followed by seven (7) treatments for hair removal using electrolysis.  Zakai Aff., ¶ 2; Kosilek Aff.., ¶¶ 3-4.   Presently, there is no medical order for further hair removal treatments using electrolysis for plaintiff. Zakai Aff. ¶ 3.

13.    Plaintiff has failed to demonstrate that the lack of additional electrolysis treatments constitute inadequate medical treatment creating a substantial risk of injury. See Torraco, 923 F.2d at 234.  It is notable that plaintiff's May 16, 2009 affidavit does not allege that the failure to provide additional electrolysis treatments has resulted in a severe depression, or other psychological injuries, or has increased plaintiff's risk for suicide or other self-injurious behaviors.  See Kosilek Affidavit.

14.    The Fenway Clinic report does not specifically recommend that plaintiff receive a minimum number of hair removal treatments using electrolysis or indicate that non-medical hair removal treatments are inadequate.  Trial Exhibit 25.  Even if this Court were to read the Fenway Clinic report as recommending hair removal treatment for plaintiff, this is not a case where the DOC's medical and mental health services providers have acted with deliberate indifference by refusing to follow a consultant's recommendation for treatment.  In fact, it is undisputed that UMass has provided plaintiff with a course of hair removal treatments using both laser and electrolysis.  Nor is plaintiff able to point to any consultant report that recommends that plaintiff receive a minimum number of electrolysis treatments or demands the removal of all hair from plaintiff's face and chest.

15.    Plaintiff is unable to meet the subjective prong of the deliberate indifference standard. Plaintiff has failed to demonstrate that Commissioner Clarke is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists to plaintiff due to the lack of additional electrolysis treatments and has drawn the inference.  See Farmer, 511 U.S. at 837.  Plaintiff's Motion for Interim Relief does not allege that defendant Clarke has

taken any action with regard to plaintiff's treatment with electrolysis, let alone an action which rises to the level of criminal recklessness.   The May 2, 2008 Joint Status Report filed in this action states that the decision regarding electrolysis treatments was a medical decision made by UMass, DOC's medical services provider.  This is not a situation where the medical services provider ordered that plaintiff receive additional electrolysis treatments and Commissioner Clarke has denied such treatments based on safety and security concerns.

16.     In the absence of any facts demonstrating that plaintiff has received inadequate medical treatment creating a substantial risk of harm and that Commissioner Clarke has acted with deliberate indifference to plaintiff's medical treatment, it is clear that plaintiff has failed to meet both the objective and subjective prongs of the deliberate indifference standard. See Farmer, supra.  Plaintiff will not succeed on the merits of the claim for interim relief.

17.     In order to pursue a claim for injunctive relief, a plaintiff must show that he faces a "real and immediate threat" of ongoing or future irreparable harm. City of Los Angeles, 461 U.S. at 109.   Here, plaintiff has failed to demonstrate that in the absence of an injunction, irreparable harm will result.

18.     Injunctive relief is not warranted in this action and the defendant will suffer the greater harm should the requested injunctive relief be allowed.  Plaintiff's request for injunctive relief, in effect, seeks to have the court step in and overrule determination regarding the medical necessity of additional electrolysis treatments made by the DOC's medical and mental health services providers.  In light of the fact that the DOC's medical and mental health providers have reviewed this issue and have rendered a decision regarding the appropriate types of treatment for the removal of plaintiff's remaining unwanted hair, the defendant would suffer the greater harm should injunctive relief be ordered.

19.     It is in the public's interest that prison administrators, working with medical and
mental health professionals, be provided the flexibility to respond to inmate medical and mental
health issues which may also raise safety and security concerns for correctional facilities and
particular inmates.  Such issues should remain in the hands of those with the expertise and
experience to handle them.  The public benefits in having prisons that are safe and well
maintained.

July 31, 2009

| | |
|---|---|
| | /s/ Joseph Sulman |
| NANCY ANKERS WHITE | Joseph L. Sulman (BBO # 663635) |
| Special Assistant Attorney General | TODD & WELD LLP |
| | 28 State Street |
| /s/ Richard C. McFarland | Boston, MA 02109 |
| Richard C. McFarland, BBO#542278 | Phone: (617) 720-2626 |
| Joan T. Kennedy, BBO #554935 | Fax:    (617) 277-5777 |
| Department of Correction, Legal Division | jsulman@toddweld.com |
| 70 Franklin Street, Suite #600 | |
| Boston, MA 02110-1300 | Frances S. Cohen (BBO # 542811) |
| Phone: (617) 727-3300, Ext. 160 | BINGHAM MCCUTCHEN LLP |
| Fax:    (617) 727-7403 | 150 Federal Street |
| rcmcfarland@doc.state.ma.us | Boston, MA 02210 |
| | Phone: (617) 951- 8872 |
| | Fax:    (617) 951-8736 |
| | frances.cohen@bingham.com |