UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*******************************************
Michelle Lynne Kosilek,                    *
                                           *
    Plaintiff,                             *
                                           *
v.                                         *
                                           *   C.A. No. 00-12455-MLW
                                           *
Harold W. Clarke,                          *
                                           *
    Defendant.                             *
                                           *
*******************************************

## RENEWED MOTION BY PLAINTIFF MICHELLE LYNNE KOSILEK FOR INTERIM RELIEF

Plaintiff Michelle Lynne Kosilek ("Ms. Kosilek") renews her motion, for interim relief to compel the Department of Corrections (the "DOC") to provide Ms. Kosilek with her medically-recommended electrolysis treatment for Gender Identity Disorder while awaiting final judgment in this matter.

Kosilek renews her motion on the basis of information obtained in discovery. That information demonstrates that all decisions relating to electrolysis have been made not for purposes of medical treatment, but expediently -- initially permitting electrolysis to prevent this Court from addressing the issue at the time of Commissioner Harold W. Clarke's testimony -- and, thereafter, terminating electrolysis apparently, exclusively due to cost concerns. Moreover, the decision respecting Ms. Kosilek was made without regard to her individualized situation but pursuant to a generalized policy formulated in consultation with Stephen Levine, M.D., this Court's Rule 706 expert. The policy simply prohibits electrolysis, and does not consider Ms. Kosilek's specific medical needs. This policy was developed without consideration of the Harry

A/73173635.1

Benjamin Association *Standards of Care* ("Standards of Care") for gender identity disorder and its statement regarding hair removal, which does not refer to shaving or depilatory products, but only that "facial hair removal via electrolysis is a generally safe, time consuming process that often facilitates the real-life experiences for biological males" and without consideration of the recommendations made for Ms. Kosilek by the GID experts retained by the DOC for that purpose.  In contrast, Aminadav Zakai, M.D., the chief psychiatrist for the DOC's mental health provider, Mental Health Management, Inc., ("MHM"), who filed an affidavit on June 3, 2009 in support of the DOC's opposition to the Plaintiff's motion for interim relief, has never examined the Plaintiff personally, or even closely reviewed her medical file.

Ms. Kosilek originally filed her motion on May 13, 2009 seeking an order compelling the DOC to provide electrolysis, as recommended originally by David Sail, M.D., in his February 23, 2003 treatment plan.  Ms. Kosilek subsequently served discovery on the DOC seeking records related to the DOC's decision not to provide further electrolysis, and filed a notice of service of discovery on July 10, 2009 with the Court.  The DOC filed a motion for a protective order regarding the requested discovery on July 14, 2009.  At an August 11, 2009 hearing, this Court denied the Plaintiff's motion for interim relief without prejudice and allowed in part and denied in part the DOC's motion for a protective order.  The Court ruled that the Plaintiff had not shown that the DOC's decision to terminate her electrolysis was based on non-medical reasons, but allowed the Plaintiff to request documents from the DOC and four depositions to determine the reasons for the DOC's termination of Ms. Kosilek's electrolysis treatment.

In the Court's August 11 order, the Plaintiff and the DOC were required to inform the Court by August 25, 2009 if they had reached a resolution or required further litigation, and if further litigation were necessary, the DOC was ordered to "identify each person who participated in or contributed to the decision to terminate Kosilek's electrolysis treatment" and "[p]roduce to

plaintiff all records relating to that decision, including but not limited to all communications relating to that decision." The Court's order permitted the Plaintiff to take "up to four depositions of individuals who participated in or contributed to the decision to Kosilek's electrolysis treatment." The Court ordered Ms. Kosilek to file her renewed motion for interim relief on or before October 16, 2009. Plaintiffs subsequently took four depositions:

- Mary Abastillas Medeiros, M.D., September 25, 2009
- Terre Kay Marshall, September 25, 2009
- Rebecca Lubelczyk, M.D., October 2, 2009
- Aminadav Zakai, Ph.D, October 1, 2009

**1.    The Decision Not To Provide Further Electrolysis To Ms. Kosilek Was Not Based On An Individualized Medical Evaluation.**

Contrary to what the Defendant has told the Court, the medical and mental health providers determined that Ms. Kosilek would not receive further electrolysis as a matter of policy. The decision was not "based on an individualized medical evaluation of Kosilek, [but] rather . . . as a result of a blanket rule." *Kosilek v. Maloney* ("Kosilek I"), 221 F. Supp. 2d 156, 193 (D. Mass. 2002). What actually occurred was that a DOC policy now being developed concerning GID and hair removal that prohibits clinicians from recommending electrolysis was applied to Ms. Kosilek's case.

The chief psychiatrist for the DOC, Aminadav Zakai, M.D., and Stephen Levine, M.D., this Court's Rule 706 expert, is formulating the statewide policy that removes clinicians from the decision-making process regarding whether to provide electrolysis.

> Q.    In that general policy being developed, electrolysis is not going to be available to inmates of GID, correct?
> A.    The specifics of strategy is not going to be determined by policy, though I think that in the draft I've seen there is a statement that electrolysis and laser hair

removal are considered cosmetic and therefore, are not the obligatory method of hair removal.
Q. And, therefore whether or not electrolysis will be offered is not a clinical decision?
A. Correct. We would be recommending hair removal. We would not be recommending any particular strategy of how the hair should be removed.
Q. So whether or not Ms. Kosilek receives electrolysis under this policy is no longer a clinical decision?
A. True.

Deposition of Aminadav Zakai, M.D. ("Zakai Dep.") at 60:1-9 (all excerpts of Zakai Dep. attached hereto as Exhibit A).[1]

This policy is being formulated by Dr. Zakai based on his consultations with Dr. Levine.[2]

Q. In conjunction with your discussions with Dr. Levine, you're developing a GID program.
A. Yes.
Q. Are you developing a general GID policy or is it a program?
A. I was developing the clinical program. The policy was done by the Departments of Correction without direct consultation with me.
Q. Is there a general Department of Correction's policy now that you're aware of?
A. There is a draft circulating, yes.
Q. Is it regarding Gender Identity Disorder, in general, or electrolysis hair removal, in general?
A. It is regarding in general, and I think it does have an opinion regarding electrolysis.

Deposition of Aminadav Zakai, M.D. ("Zakai Dep.") at 36:17-37.[3]

The DOC never determined that further electrolysis would not be effective for Ms. Kosilek specifically. Rather, the opinion not to provide her further treatment was based on the opinion developed by Dr. Levine that electrolysis is never clinically recommended.

---

[1] The Defendant, Commissioner Harold Clarke, participates in the drafting of the GID and hair removal policy. *See* Deposition of Terre Marshall ("Marshall Dep.") at 53:6-23.
[2] Dr. Zakai retained Dr. Levine as a GID consultant for MHM based on the referral by Larry Weiner, a DOC official in its health services department. *See* Zakai Dep. at 28:1-9.
[3] The draft GID policy also states that "sexual reassignment surgery is not an option for inmates within the Massachusetts Department of Correction." Zakai Dep. at 37:21-24.

> Q. So it's fair to say that your opinion regarding the efficacy of offering shaving and depilatory products for hair removal is based on Dr. Levine's opinion?
> A. It was jointly developed through discussion between me and Dr. Levine, yes.
> Q. And that opinion is with regard to Ms. Kosilek as well as GID inmates, in general?
> A. Yes. It is a general opinion now being applied specifically to Ms. Kosilek, but that was not the intention at the time this opinion was made.

Zakai Dep. at 48:9-20.  Indeed, Terre Marshall, the DOC's Acting Commissioner for Clinical Services, testified explicitly that Dr. Levine developed the policy that was used to deny Ms. Kosilek further electrolysis.

> Q. So is Dr. Lubelczyk the medical professional who made the decision that electrolysis would not be effective for Ms. Kosilek?
> A. The decision was not so much whether or not it would be effective.  The continuing electrolysis at that point was determined to be not clinically indicated.  So…
> Q. Who made that decision?
> A. Well, Dr. Zakai indicated it.  Dr. Levine by way of discussing with me the policy issue of permanent hair removal also.

Deposition of Terre Marshall ("Marshall Dep.") at 52:19-53:5.

That decisions regarding Ms. Kosilek's electrolysis treatment are driven by policy rather than an "individualized medical evaluation" is further evidenced by the fact that Dr. Zakai was first asked to draft an affidavit in support of the Defendant's opposition to the Plaintiff's original motion for interim relief concerning only the DOC's general policy regarding shaving and depilatory products.  He was not asked to draft an affidavit specific to Ms. Kosilek.  Dr. Zakai testified that the DOC's counsel asked him, several weeks prior to the filing of his June 3, 2009 affidavit, that "they initially sought my opinion about the use of non-laser or electrolysis hair removal as an alternative in cases of GID and that was my original affidavit.  Later they asked me to make it more specific to Ms. Kosilek."  Zakai Dep. at 54:12-19.  Indeed, Dr. Zakai

believes that he was asked to file an affidavit in this case based on his leadership in the GID program, not on his participation in Ms. Kosilek's treatment.

> Q. Do you know why you were asked to draft this affidavit as opposed to another provider at MHM or U Mass.?
> A. I would guess that it was because I was heading the GID program, though I was not specifically dealing with Michelle Kosilek

*Id.* at 56:16-21.

**2.   The DOC Policy Not To Provide Electrolysis Was Developed Without Consideration of the Standards of Care or Ms. Kosilek's Treatment Plan Developed By Dr. Seil.**

Drs. Levine and Zakai did not refer to or even discuss the Standards of Care when developing the GID and hair removal policy.  *See* Zakai Dep. at 50:24-51:7.  Nonetheless, Dr. Zakai recognizes that the Standards of Care "are the acknowledged standards in the field." *Id.* at 12:3-4.  He further acknowledged that the Standards of Care specifies electrolysis, not shaving or depilatory products, as appropriate for facial hair removal; shaving and depilatory products are not mentioned.  *Id.* at 50:21-23.

> Removal of Beard and other Unwanted Hair for the Male to Female Patient. Beard density is not significantly slowed by cross-sex hormone administration. Facial hair removal via electrolysis is a generally safe, time-consuming process that often facilitates the real-life experience for biological males.  Side effects include discomfort during and immediately following the procedure and less frequently hypo-or-hyper pigmentation, scarring, and folliculitis.  Formal medical approval for hair removal is not necessary; electrolysis may be begun whenever the patient deems it prudent. *Many patients will require two years of regular treatments to effectively eradicate their facial hair. It is usually recommended prior to commencing the real-life experience.*  Hair removal by laser is a new approach, but experience with it is limited.

Standards of Care, Trial Ex. 9 at 18 (emphasis added).  Further, Dr. Lubelczyk, the only provider who attended a treatment session and who commented on the effectiveness of the electrolysis during the May 4, 2009 meeting between providers from MHM and UMass. and Ms. Kosilek, also had never reviewed the Standards of Care prior to that meeting.  71:18-72:1.

Dr. Lubelczyk and Dr. Zakai are unfamiliar with Ms. Kosilek's treatment plan.  Dr. Zakai readily acknowledges that he has never met Ms. Kosilek, has never treated or evaluated her, and has only "browsed" through her medical file prior to signing his affidavit.  *See* Zakai Dep. 22:6-20.  Dr. Lubelczyk had never reviewed the February 23, 2003 treatment plan recommended and developed by GID specialist David Seil, M.D., in which he expressly recommends electrolysis as the method for facial hair removal.  *See* Lubelczyk Dep. at 24:13-25:12.

The deviation from Dr. Seil's explicit recommendation for electrolysis is particularly noteworthy because former Commissioner Kathleen Dennehy testified that she found Dr. Seil's treatment plan and its specific recommendation for electrolysis "very helpful."  *See* Deposition of Kathleen Dennehy ("Dennehy Dep.") at 165:14-16.  She provided this testimony after reviewing all of the recommendations in his treatment plan, including the express recommendation for electrolysis.

> Q.  And the other recommendations, do you see those?
>
> A.  The second one was electrolysis, again, outlining it.  It was a very helpful report because it provides information about the significance of each step.  Outlining that facial hair is a major signifier of male gender, the difficulties of the individual with GID exists more in having to see oneself in the mirror than presenting to the public.  Laser treatments are quick and more cost-effective than previous methods.  In combination with estrogen, electrolysis is very effective.  So it seems to outline the option of electrolysis or laser treatment.

Dennehy Dep. at 163:12-22.  Dr. Seil followed the Standards of Care in recommending electrolysis, and former Commissioner Dennehy approved of the recommendation.  Now Dr. Levine and Dr. Zakai deviate from the Standards of Care in recommending shaving and depilatory products for hair removal, and the DOC has not only approved of the recommendation, but are standardizing the recommendation as part of its general GID policy.

**3.    No One With The DOC Or With Its Providers Know Who Made The Decision Not To Allow Further Electrolysis.**

Even though Plaintiff's counsel deposed four persons supposedly involved in the decision-making process regarding Ms. Kosilek's electrolysis, there was no clear answer regarding who made the decision or when a decision either to provide electrolysis, or not to provide more electrolysis. For instance, Terre Marshall of the DOC testified that the decision was made by Dr. Zakai and Dr. Levine. *See* Marshall Dep. at 53:2-5. Dr. Lubelczyk testified that she is not aware when the decision was made not to order further electrolysis, and is not aware of the process or was part of the decision-making process. *See* Lubelczyk Dep. at 51:5-52:1. She believes that prior to May 1, 2009, when the providers met to discuss Ms. Kosilek's treatment and hair removal in her absence, the decision had already been made not to provide her further electrolysis, but she does not know who made the decision. *Id.* at 76:18-77:4. However, Dr. Zakai testified that a general consensus emerged at the May 1, 2009 meeting between providers from MHM, UMass, UMass counsel, and DOC staff, that electrolysis should not be offered and other methods should be offered instead to Ms. Kosilek. *See* Zakai Dep. at 46:3-21.

Most significantly, perhaps, it is not at all clear who formed the most important opinion that the DOC relied on in deciding not to order further electrolysis. That opinion is that, as of September 2008, Ms. Kosilek would require six months to one year further of electrolysis sessions. *See* May 4, 2009 Progress Note at 1. However, Dr. Lubelczyk was the only provider who observed an electrolysis session, which she attended in September 2008, and she testified that she was "given no indication of how long [the electrolysis] would take" into the future and that "[they] didn't discuss length of time" at the session. *See* Lubelczyk Dep. at 43:2-12. She testified that she made the comment at May 4 meeting regarding six months to one year, though it was not based on her observation of the electrolysis but rather a comment from someone else at UMass, though she could not recall who made the comment. *See* Lubelczyk Dep. at 78:18-79:6; 52:14-20 (testifying about identical statement made by unknown person on March 19, 2009

teleconference). Thus, the DOC's entire claim that Ms. Kosilek would require six months to one year of electrolysis sessions is based on *an unnamed source*.

**4.     The Plaintiff Has Suffered Serious Harm From Her Denial Of Electrolysis.**

Ms. Kosilek has suffered continued and increasing anxiety and dysphoria through the continued denial of her medically necessary electrolysis. The Defendant's focus on her lack of suicidality in its opposition to the Plaintiff's original motion for interim relief is a cynical and reprehensible attempt to put Ms. Kosilek in a catch-22 position regarding her condition. First, she is accused of not having actual symptoms related to her lack of electrolysis because she does not exhibit suicidality or self-injurious behavior. *See* Def. Opp. to Pl. Mtn. for Interim Relief at 9 (ECF No. 463) ("The [plaintiff's] affidavit is void of any claim that without an injunction plaintiff will suffer a serious psychological injury or will engage in suicidal or self-injurious behavior."). Yet, suicidality and self-injurious behavior are explicitly cited in the Standards of Care as *contraindications* for sex reassignment surgery, the very treatment that Ms. Kosilek ultimately seeks. *See* Trial Exhibit 9 at 20 (listing under eligibility requirements "demonstrable progress in dealing with work, family, and interpersonal issues resulting in a significantly better state of mental health; this implies satisfactory control of problems such as . . . suicidality, for instance."). Further, the DOC as a policy refuses to accede to an inmate's demands based on threats of self-injurious behavior. *See* Def. Req. for Findings of Fact and Conclusions of Law at 60-63 (ECF No. 446-47) (discussing policy of refusing to accede to inmates threats of self-injurious behavior). In typical fashion, the Defendant has placed Ms. Kosilek in a position where she cannot display any symptoms that will result in her receiving treatment.

The severe anxiety and dysphoria caused to Ms. Kosilek by the continued lack of treatment is clear, however. The starkest example of this occurred on May 4, 2009 when she told

her long-time therapist Mark Burrowes that she wanted to end their professional relationship due to his involvement in the meeting that day with Ms. Kosilek, her medical and mental health providers, and DOC staff.  *See* May 4, 2009 letter from Kosilek to Burrowes, attached hereto as Exhibit E.  Her reaction to the meeting was not mere disappointment at being told that she would not receive any further treatment, but a psychological reaction aimed at her only supporter at MCI-Norfolk, whom she believed had abandoned her.  She has since reconciled with Mr. Burrowes.

The reported behavior by Ms. Kosilek in the May 4, 2009 meeting with her providers and DOC staff also demonstrates her severe anxiety and dysphoria caused by her lack of treatment.  The Progress Note describes her as showing "immediate sensitiv[ity]" when the electrolysis issue came up.  Mr. Burrowes Progress Note from the meeting describes her as becoming emotional meeting with her providers, in which her long-time therapist Mark Burrowes was involved, and her apologizing to the group if she came across as hostile.  *See* May 4, 2009 Progress Note of Mark Burrowes, attached hereto as Exhibit F.

October 19, 2009

/s/Frances S. Cohen_____
Frances S. Cohen (BBO # 542811)
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02210
Phone: (617) 951- 8872
(617) 951-8736
frances.cohen@bingham.com

/s/ Joseph Sulman_____
Joseph L. Sulman (BBO # 663635)
TODD & WELD LLP
28 State Street
Boston, MA 02109
Phone: 617-720-2626
Fax: 617-624-4849
jsulman@toddweld.com