UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELLE LYNNE KOSILEK,<br><br>        Plaintiff,<br><br>  v.<br><br>LUIS S. SPENCER, in his official capacity as Commissioner of the Massachusetts Department of Correction,<br><br>        Defendant. | Civil Action<br>No. 00-12455-MLW |

**AFFIDAVIT OF FRANCES S. COHEN IN SUPPORT OF PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

  I, Frances S. Cohen, being duly sworn, deposes and states as follows:

  1. I am an attorney licensed to practice law in the Commonwealth of Massachusetts and have been a partner in the Boston office of Bingham McCutchen LLP ("Bingham") from November 2006 until the present. Prior to my employment at Bingham, I was a partner at the law firm Dechert LLP ("Dechert") from February 2003 until November 2006.

  2. I have been lead counsel to Michelle Lynne Kosilek since this court appointed me early in 2000.

  3. I represented Kosilek while a partner at Dechert from March 2003 to November 13, 2006 and while a partner at Bingham McCutchen from November 14, 2006 until the present.

  4. My colleagues Joseph L. Sulman, Jared Craft, and Anna Rachel Dray-Siegel, paralegal, subsequently joined the case and became core members of the litigation team, assisting with discovery, pre-trial motion practice, trial preparation and post-judgment briefing.

  5. Over the past nine and a half years, the core members of the litigation team have performed significant substantive work during all aspects of litigation, including summary

1

judgment briefing, taking multiple depositions and preparing several expert witnesses, preparing for the lengthy 28-day bench trial, and drafting post-judgment briefs.

6. This action involved complex and sensitive issues related to the rare, unique and often unrecognized psychological condition of Gender Identify Disorder ("GID") and proper treatment of such illness. The extensive history and complexity of the case required the Dechert and Bingham attorneys to dedicate substantial time investigating facts, conducting discovery, taking depositions, working with and deposing several expert witnesses, and preparing for and participating in a lengthy and demanding 28-day bench trial.

7. Plaintiff's Second Amended Complaint contained one primary count alleging that the Massachusetts Department of Corrections ("DOC") denied her adequate medical care with deliberate indifference to her serious medical needs, in violation of the Eighth Amendment to the United States Constitution.

8. Plaintiff sought injunctive relief against the defendants enjoining them to provide adequate medical care to Kosilek consistent with the treatment recommendations of the mental health and other medical professional involved in her care, including but not limited to sexual reassignment surgery and an independent medical evaluation by a GID specialist for electrolysis.

9. During discovery, Plaintiff's counsel took several pre-trial depositions in order to narrow the focus for trial, including the deposition of Dr. Appelbaum, the DOC's psychiatrist-in-chief.

10. Called to the stand at trial, Dr. Appelbaum's testimony, refreshed at times by extensive notes of meetings with the DOC, provided much of the chronology that underlies the Court's opinion.

11. Plaintiff's counsel also retained, prepared and called to the stand several experts, including, Dr. George R. Brown, Dr. Randi Kaufman, Dr. Marshall Forstein, and Dr. Loren Schechter (by deposition), as well as treating clinician Mark Burrowes.

12. Plaintiffs' counsel cross-examined the DOC's experts Cynthia Osborne and Chester Schmidt. Those examinations required extensive preparation, and covered a range of

subjects, including Ms. Osborne's communications with Dr. Schmidt, as well as the bias of Dr. Schmidt's academic department and his academic expertise, as well as the substance of his opinions.

13. In addition, counsel traveled to Ohio to take the deposition of the court-appointed expert Dr. Stephen Levine.

14. Plaintiff's counsel also cross-examined the two superintendents, the DOC's security experts, including Arthur Beeler and Robert Dumond.

15. Prosecuting this case was a huge undertaking by many measures. Plaintiff's counsel extensively briefed the legal and factual issues, including opposing a meritless motion for summary judgment.

16. Approximately 17 witnesses testified at trial.

17. The Court received approximately 150 exhibits and marked another 60 for identification.

18. The docket sheet includes 558 filings between 2003 and September 16, 2012.

19. Plaintiff submitted requests for findings of fact and rulings of law that numbered 192 pages.

20. After the 28-day bench trial held on various days during the time period May 2006 to May 2008, the Court issued a 126-page opinion and related rulings, concluding that Defendant had violated Kosilek's Eighth Amendment rights by being deliberately indifferent to her serious medical needs by denying her the sex reassignment surgery that the DOC's doctors had found to be the only adequate treatment for her severe GID. The Court also found that this violation would continue if the court did not issue an injunction ordering the DOC to provide the treatment its doctors prescribed.

21. Plaintiff thus prevailed on her primary Eighth Amendment claim and obtained unprecedented court-sanctioned injunctive relief.

22. The sole issue on which Plaintiff did not prevail relates to her request for interim relief to compel the DOC to provide Kosilek with her medically recommended treatment while

awaiting final judgment in this matter. The Court, however, denied Plaintiff's motion without prejudice to filing a renewed motion at a later time. Plaintiff has moved for reconsideration of this issue and accordingly, has included the relatively modest amount of time spent on this issue in this petition.

23.     Throughout the over nine-year duration of this litigation, Plaintiff's counsel has borne the burden to explain to an increasingly distraught client the twisted and complex vicissitudes over a long period.

## PETITION OVERVIEW

24.     Virtually all of the attorney and paralegal time billed to this case was for work done in furtherance of Plaintiff's successful Eighth Amendment claim.

25.     Only a substantially small and modest amount of time and expense was spent on Plaintiff's motion for preliminary injunctive relief regarding electrolysis treatment. A conservative estimate, i.e. one drawing inferences in favor of the defendant, is that some 45 hours were dedicated to this issue, resulting in fees and in costs.

26.     For both attorneys' fees and costs, I have reviewed all billing, time and cost entries and eliminated time and cost entries that lack sufficient detail or were duplicative, excessive or otherwise unnecessary.

## ATTORNEYS' TIME

27.     In my opinion, the petition seeks a fair and reasonable amount of legal fees for attorney and paralegal time spent over the nine-year litigation in the sum of $644,573.125.

28.     Over the nine years of litigation in this case, a total of thirty-one timekeepers, attorneys, paralegals, librarians and other staff have contributed time to this case.

29.     However, for the purposes of this fee petition, Plaintiff is only seeking attorneys' fees for a small team of lawyers which comprised the core trial team at Dechert and Bingham.

30.     The four members of the core trial team consisted of three attorneys and one paralegal. Team members included Frances S. Cohen (a partner at first Dechert and then Bingham during the course of the litigation), Joseph L. Sulman (a Dechert associate), Jared Craft

A/75194375.2

(a Bingham associate who assisted with narrow issues), and Anna Rachel Dray-Siegel (then a Dechert paralegal).

31. Prior to reducing the number of billing attorneys and staff and eliminated duplicative and excessive time entries, the total amount of attorneys' fees associated with this matter totaled $1,512,617.60, representing 4,694 hours in total.

32. Because Kosilek is incarcerated, I have applied the limitations of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d) ("PLRA"), which limits attorneys' fees to one hundred and fifty percent (150%) of the current Criminal Justice Act ("CJA") rate.

33. Paralegal fees are also reimbursable under the PLRA at reasonable market rates as long as the rates do not exceed the attorney rate under the PLRA (150% of the current CJA Rate).

34. The current CJA rate in the District of Massachusetts is $125. *See* Exhibit A, attached hereto. As such, Plaintiff's counsel has requested fees of $187.50 ($125 x 1.5) per hour of attorney time and $100.00 per hour of paralegal time as follows:

| Attorney/Paralegal Name | Total Hours Expended | PLRA Rate | Total Billable Amount |
|---|---:|---:|---:|
| Frances S. Cohen, Esq. | 1,040.80 | 187.50 | $195,150.00 |
| Joseph L. Sulman, Esq. | 1,743.89 | 187.50 | $326,979.38 |
| Jared Craft, Esq. | 61.30 | 187.50 | $11,493.75 |
| Anna Rachel Dray-Siegel | 1,109.50 | 100.00 | $110,950.00 |
| Total | 3,961.39 | | $644,573.13 |

35. Each of these timekeepers is a member in good standing of the bar of the Commonwealth of Massachusetts. I am also a member of the bar of the State of New York. I graduated from the University of Pennsylvania in 1977 and Columbia Law School in 1980. Since becoming a partner at Hill & Barlow in 1988, I have practiced law continuously as a partner in a law firm specialized in litigation. I am a member of the bar of this Court, of the First Circuit Court of Appeals and the United States Supreme Court, among other courts.

36.     Joseph L. Sulman has been admitted to practice in Massachusetts since 2005 and in the District of Massachusetts and the First Circuit Court of Appeals since 2006.  He is a graduate of Oberlin College and Georgetown University Law Center where he graduated *cum laude*.  Sulman was a first-year associate at Dechert LLP when he joined the litigation team in September 2005.  He contributed significant time to this case as an associate at Dechert during 2005 to 2008.  Sulman is currently the principal and founding attorney at the Law Office of Joseph L. Sulman.  Sulman does not seek any fee award for his time since leaving Dechert.

37.     Jared Craft is a second-year associate in Bingham McCutchen LLP's litigation department.  Craft was a first-year associate when he joined this case in 2011.  He is a graduate of Dartmouth College and Harvard Law School.

38.     Anna Rachel Dray-Siegel joined the litigation team while a paralegal at Dechert LLP from 2005 to 2007, when she left her employment with Dechert.  Dray-Siegel subsequently went to law school and is currently a second-year litigation associate at Choate, Hall & Stewart.  She is a graduate of Princeton University and Washington University in St. Louis School of Law.

39.     Exhibit B attached hereto includes billing records for time spent by Dechert attorneys, paralegals and staff over the last nine and a half years of this case.  Time entries span the year-date range 2003 to 2008.

40.     Exhibit C attached hereto includes billing records for time spent by Bingham attorneys, paralegals and staff over the last nine and a half years of this case.  Time entries span the year-date range 2006 to 2012.

41.     Both Dechert and Bingham keep these billing records in the ordinary course of business, and each entry was entered contemporaneously by the individual attorney, paralegal or staff member as required by firm policy.

42.     I have personally reviewed each of the individual time entries submitted herein and made a good faith effort to exclude from the fee request any hours that I believed to be duplicative, excessive or otherwise unnecessary.

43. I have also excluded all the time billed by more than 25 individuals, including attorneys, summer associates, paralegals, research specialists and other staff, who worked on this case in addition to the four members of the core litigation team listed above.

44. After such exclusions, the resulting requested fee amount represents a significantly reduced percentage of the potentially recoverable attorneys' fees.

45. In my opinion and based on my experience, the amount of time spent by the four key litigation team members was reasonable and necessary for this nine-and-a-half year litigation that culminated in a 28-day trial and involved complex and significant medical health issues and civil rights violations.

46. The recoverable hourly rates charge for attorney and paralegal time spent on this case under the PLRA ($187.50 and $100.00, respectively) are much less than the hourly rates typically charged by the Dechert and Bingham attorneys and paralegals who were members of the litigation team. Over the course of the litigation, the attorneys' and paralegals' billable rates (at their respective firms) have incrementally increased with each successive year.

47. The standard billable rates for partner Frances S. Cohen for the time period she worked on this case, years 2003 to 2012, ranged from $505 to $825.

48. The standard billable rates for associate Joseph L. Sulman for the time period he worked on this case, years 2005 to 2007, ranged from $235 to $410.

49. The standard billable rate for associate Jared Craft for the time period he worked on this case, year 2011, is $375.

50. The standard billable rate for paralegal Anna Rachel Siegel-Dray for the time period she worked on this case, years 2005 to 2007, ranged from $144 to $185.

51. Based on my review of Dechert's and Bingham's billing records for this matter, the value of services donated by both firms over the course of the litigation exceeds $1.5 million dollars, if calculated at standard billing rates for the attorneys and legal staff involved. It is clear that the award sought here is substantially less than the market value of services expended by Dechert and Bingham.

52. Moreover, Bingham and Dechert have worked on this matter *pro bono publico*. Neither firm expects to profit from an award of attorneys' fees or costs in this matter. Both firms will apply costs awarded to defray the actual out-of-pocket costs of the firm and fees awarded to a charitable contribution or to support the firms' *pro bono* programs.

## COSTS AND EXPENSES

53. The fee petition seeks reimbursement of the costs and expenses incurred by Dechert and Bingham during the nine and a half year course of the litigation and recoverable under 42 U.S.C. § 1988 and 28 U.S.C. § 1920 in the sum of $161,873.12.

54. <u>Exhibit D</u> attached hereto includes itemized costs records for expenses incurred by Dechert over the last nine and a half years of this case.

55. <u>Exhibit E</u> attached hereto includes itemized costs records for expenses incurred by Bingham over the last nine and a half years of this case.

## ELECTRONIC LEGAL RESEARCH

56. The motion seeks reimbursement of Dechert's and Bingham's total electronic legal research expenses in the amount of $35,365.11.

57. The reports at <u>Exhibits D and E</u> list all electronic research costs, including computer-assisted research fees, such as Westlaw, Lexis/Nexis, and Courtlink.

58. Dechert and Bingham are not seeking reimbursement of any staff time billed to accessing and conducting research in the above electronic databases.

## EXPERT EXPENSES

59. The motion seeks reimbursement of Dechert's and Bingham's total expert witness expenses in the amount of $52,277.50.

60. The total expert expenses include expert witness fees for the services of Plaintiff's expert witnesses in the following amounts: $21,221.50 for Dr. George R. Brown; $6,525.00 for Dr. Randi Ettner, $80.00 for Dr. Randi L. Kaufman; $5,000.00 for Dr. Loren Schechter and $2,400.00 for Dr. Marshall Forstein.

## DEPOSITIONS AND TRANSCRIPTS

61. Dechert's and Bingham's total court reporter, deposition, transcript and records request costs incurred in this litigation are $34,725.68.

62. The reports at Exhibits D and E list all the court reporter, deposition, transcript and records request costs incurred by Dechert and Bingham, and are kept in the ordinary course of business.

## PHOTOCOPYING/SCANNING FEES

63. Dechert's and Bingham's total photocopying and scanning costs for this litigation are $30,594.08.

64. The reports at Exhibits D and E list all printer copy charges, production scanning, document scanning charges, outside copy and printing services, and duplication charges attributable to this case, and are kept in the ordinary course of business.

## POSTAGE, FACSIMILE AND COURIER FEES

65. Dechert's and Bingham's total postage, facsimile and courier costs for this litigation are $2,661.74.

66. The reports at Exhibits D and E list all costs for retrieval services, overnight/express delivery, postage, facsimile, and messenger and courier services incurred by Dechert and Bingham, and are kept in the ordinary course of business.

## LIBRARY RESEARCH AND FILING FEES

67. Dechert's and Bingham's total library research and filing fees for this litigation are $2,777.53.

68. The reports at Exhibits D and E list costs for all library research requests, search/research/filing services, library book and periodical requests, and docket filing fees attributed to this litigation, and are kept in the ordinary course of business. The petition does not seek reimbursement for staff time necessary to run these searches and retrieve the books and articles.

**TRAVEL COSTS**

69.     Dechert's and Bingham's total travel and lodging costs for this litigation are $2,870.67.

70.     The reports at <u>Exhibits D and E</u> list costs for all airfare, car rental, hotel, local parking charges and out of town accommodation costs attributed to this litigation, and are kept in the ordinary course of business.  Costs for taxi and corporate limousine travel were excluded from this request for fees.

**TELEPHONE COSTS**

71.     Dechert's and Bingham's total telephone costs for this litigation are $600.81.

72.     The reports at <u>Exhibits D and E</u> list costs for all telephone charges, including necessary long distance calls attributed to this litigation, and are kept in the ordinary course of business.

**DECHERT'S AND BINGHAM'S PRO BONO PROGRAMS**

73.     All lawyers at Dechert and Bingham are encouraged to participate in *pro bono* work.

74.     Dechert's and Bingham's *pro bono* clients are clients of each firm and are owed the same professional duties of competent, zealous and unconflicted representation that are owed a paying client.

75.     After recovery of out-of-pocket costs, any fees award in *pro bono* cases are deposited into Dechert's and Bingham's *pro bono* accounts to fund charitable contributions and future *pro bono* litigation or to support the firms' *pro bono* programs.

I declare under penalty of perjury that the forgoing is true and correct.

Sworn and attested to by Frances S. Cohen this 4th day of October, 2012.

/s/Frances S. Cohen<br>
Frances S. Cohen

A/75194375.2