```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


MICHELLE KOSILEK,                    )
        Plaintiff,                   )
                                     ) C.A. No. 00-12455-MLW
        v.                           )
                                     )
HAROLD W. CLARKE, ET AL.             )
        Defendants.                  )
```

## ORDER

WOLF, D.J.                                          June 2, 2014

The court has received the attached May 23, 2014 letter from plaintiff Michelle Kosilek. Kosilek is hereby reminded that as he is represented by counsel only counsel may communicate with the court on his behalf. See United States v. Tracy, 989 F.2d 1279, 1285 (1st Cir. 1993) ("A district court enjoys wide latitude in managing its docket and can require represented parties to present motions through counsel.").

                                    /s/ Mark L. Wolf
                                    UNITED STATES DISTRICT JUDGE

Dear Judge Wolf,

I hope you've been well, and that your semi-retirement has afforded you the luxury of quiet introspection on those issues that nag at the edges of every free thinker's consciousness. You may not have been my first choice in the beginning, but the decades have revealed a judicial courage that would surely put you on a short list with your friend and colleague Nancy Gertner.

It was your remark to Attorney McFarland at a post-decision hearing (about his apparent subornation of perjury that you could have taken official notice of) that brings me to your doorstep once again; that, and the advice of a dear friend and confidante who advised me to leave the 1st Circuit to their decision-making and bring this issue to your attention instead.

As you can see from our response to the defendant's en banc brief (Enclosure A), Attorney McFarland has continued to defraud the Court. He has claimed "regular permanent hair-removal," or "continues to receive electrolysis" in every brief filed with the 1st Circuit.

Even after Attorney Sulman brought this deceit to the Court's attention - albeit couched in the genteel phrasing that decorum requires, Attorney McFarland repeated the ongoing hair-removal lie at Oral Argument in the en banc review (at min. 17) *(Enclosure C)*

This continued perjury now threatens to unlawfully influence the 1st Circuit's decision, as he skillfully embedded this illegal landmine in his "adequacy of treatment argument."

The enclosed request form to the DOC's mental health providers (enclosure B, requesting the electrolysis he claims I'm receiving) is my attempt to undo the fraud that Attorney McFarland has introduced to the appellate process and should serve to exhaust my state remedies before filing Kosilek III, as you suggested when you learned that cost was why they stopped it.

Respectfully submitted,
Michelle Lynne Kosilek

cc: Joseph Sulman
    Richard C. McFarland
    file



De'Lonta, 708 F.3d at 526 ("[J]ust because Appellees have provided De'Lonta with some treatment consistent with the GID Standards of Care, it does not follow that they have necessarily provided her with constitutionally adequate treatment."); Greeno v. Daley, 414 F.3d 645, 654 (7th Cir. 2005) (prisoner could prevail on Eighth Amendment claim with evidence that defendants "gave him a certain kind of treatment knowing that it was ineffective");[10] (See Brief of Appellee ("App. Br.") at 48-49.).

IV. The District Court Correctly Rejected The Defendant's Security Concerns.

    A. Deference Afforded to Prison Officials Can Be Lost Due to Bad Faith.

The Eighth Amendment does not countenance blind deference to prison officials in regards to inmate medical care. Deference applies, as this Court explained in Battista, "so long as the balancing judgments [between conflicting demands] are within the realm of reason and **made in good faith**." Battista, 645 F.3d at 454 (emphasis added); Mitchell v. Maynard, 80 F.3d 1433, 1438 (10th Cir. 1996) (refusing to "blindly acquiesce" to prison

---

[10] Moreover, the DOC has incorrectly asserted throughout this appeal that Kosilek is continuing to receive hormone therapy and hair removal. She is not. RA 57-59. The DOC stopped providing hair removal after concluding that further removal is not medically necessary for Kosilek. The district court denied without prejudice Kosilek's request in her second amended complaint for an independent evaluation regarding electrolysis. RA 59. While the subject of hair removal is not at issue in this appeal, the DOC should not be credited for treatment that it no longer provides.

**Judge (female):** Is it that she doesn't need it or that you can't accommodate the security?

**Mr. McFarland:** It's that under the Eighth Amendment we are required to provide minimally adequate treatment. And that treatment would be, that is effective, and which has been effective

6

in this case. Michelle Kosilek receives hormone therapy, with an endocrinologist monitoring it, access to female clothing and canteen, access to electrolysis and hair removal, and psychotherapy. So we have been providing a significant amount of treatment directed towards Ms. Kosilek's disorder. And would access(?) [17:10] treatment in the background, should Ms. Kosilek become depressed or disordered at some point or suicidal, then there are other treatments that would be put into place, not in place of GID treatment, but in conjunction with, to address any suicide ideation, or depression that may come up in the future, based on Ms. Kosilek not receiving the desired sexual assignment surgery. In fact, this is a surgery that is available to only not even, to less than 5% of the general dysphoric population, according to the testimony of Dr. Schmidt and Dr. Kaufman. Very few people receive this treatment in the community.

**Judge (male):** What was the testimony of Dr. Schmidt as to the necessity of this treatment?

**Mr. McFarland:** Well, he did not believe that it was medically necessary to have the sexual assignment surgery for any individual in the community. His perspective was that, if you wanted to do it and you were ready, he would open up the door for you. He would send the materials to your surgeon and say there are no counter-indications. So he, his position was to let the patient make the entire decision. And if the decision was that they wanted to go ahead with the surgery, he would do everything in his purview to assist that by providing all the information to the surgeon.

**Judge (female):** Dr. Schmidt's role in this, this whole diagnosis is that he does an evaluation, and that's all that he does professionally in this realm. His testimony was that, once he diagnoses the GID, he then refers the patient to a psychotherapist, who provides a more detailed evaluation to determine the individualized needs of that particular patient.

**Mr. McFarland:** That seems pretty traditional in my understanding of various practices that...

**Judge (female, interrupts):** But Dr. Schmidt doesn't do that detailed evaluation himself. His role was limited to just making a determination as to whether the patient had the disorder in the first place.

**Mr. McFarland:** Well, I think he did more than diagnosis. In fact he would write the letters, he would send his files to the surgeon, so it was more than just a passing-off.

**Judge (female):** Yes, but he stayed neutral because it was a patient decision.

**Mr. McFarland:** If being neutral...

**Judge (female, interrupts):** If you re-read his transcript...

**Mr. McFarland:** But neutral in the decision of whether or not the patient should have it or not. He didn't say, "You must have the surgery because I think it's the only thing you can do." He said, "If you want the surgery, then you should go ahead and do it." In fact Dr. Levine had a similar practice of opening the door for individuals they felt were appropriate and then letting the patient make the decision.

**Judge (female):** But Dr. Schmidt never said that it was never needed. *[Digital tone]*

7

To: Bill Micucci - Regional Mental Health Director

B

**Massachusetts Department of Correction**
**Health Services**
**SICK CALL REQUEST FORM**

Name: Michelle Lynne Kosilek     ID#: W-53865     Unit #: 6-1
Date of Birth: 4-10-49     Date: 5-21-14     Check ONLY One Box: ☐ Medical
☐ Dental
Nature of problem or request: Please have my electrolysis treatments reinstituted, now that Atty.     ☒ Mental Health
Richard C. McFarland has assured the Court of Appeals — in the DOC's brief, and at oral argument on 5-8-14 — that I am now receiving electrolysis, as part of his "adequate treatment" argument, when it was stopped in 2009 after six sessions, based on cost, while Christine's is being completed.
I consent to be treated by the healthcare staff for the condition described above.
Inmate Signature: Michelle Lynne Kosilek     Date: 5-21-14

**********DO NOT WRITE BELOW THIS AREA - PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA**********

Date/Time Received

Referred to:     ☐ Nurse     ☐ Provider
               ☐ Mental Health   ☐ Dental   ☐ Other
Institution: _____     Slip Sorted By: _____
☐ Emergency   ☐ Urgent   ☐ Routine   ☐ Administrative

Subjective:

Objective:  T _____ P _____ R _____ B/P _____ W/T _____

Assessment:

Plan:

CC Joseph L. Salman + GLAD
   Judge Mark L. Wolf
   Richard C. McFarland
   File

Signature & Title _____     Date: _____     Time: _____